**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| REVA MEDICAL, INC., | Case No. 20-10072 (JTD) |
| Debtor.[1] | Related Docket Nos. 16 & 34 |

**FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING
THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING**

Upon consideration of the motion [Docket No. 16] (the "Motion") of REVA Medical, Inc. (the "Debtor" or "REVA") in the above-captioned case (the "Chapter 11 Case") for entry of an interim order (the "Interim Order") and a final order (this "Final Order"): (i) authorizing the Debtor to use cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, "Cash Collateral") of Prepetition Secured Parties (as defined below); (ii) providing adequate protection to the Prepetition Secured Parties to the extent set forth herein; and (iii) modifying the automatic stay imposed by section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and the Final Order; and initial and final hearings on the Motion having been held by this Court on January 15, 2020 (the "Interim Hearing") and February 18, 2020 (the "Final Hearing"), and the Court having considered the Motion, *Declaration of Jeffrey Anderson in Support of Chapter 11 Filing and First Day Pleadings* [Docket No. 3] (the "First Day Declaration") and the evidence submitted or adduced and the arguments of counsel made at the Interim and Final Hearing; and notice of the Motion, the Interim Hearing, and the Final Hearing, if any, having been given in accordance with

---

[1] The last four digits of the Debtor's tax identification number are (0505).  The Debtor's mailing address is 5751 Copley Drive, Suite B, San Diego, CA 92111.

Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014; and the Final Hearing to consider the final relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion on an final basis having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief requested is fair and reasonable, in the best interests of the Debtor, its estate, creditors, and equity holders, and essential to maximize the value of the assets of the Debtor's business and estate; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A.    <u>Petition Date</u>.  On January 14, 2020 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

B.    <u>Debtor in Possession</u>.  The Debtor is continuing in the management and operation of its business and properties as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  As of the date hereof, no trustee or examiner or official committee of unsecured creditors (the "<u>Creditors' Committee</u>") has been appointed in this Chapter 11 Case.

C.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Debtor, the Debtor's estate, this proceeding, and the persons and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  The Motion is a core proceeding pursuant

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052.

to 28 U.S.C. § 157(b).  The Debtor has consented to entry of a final order by this Court.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    <u>Debtor's Representations</u>.  Without prejudice to the rights of any other party, but in each case subject to the limitations contained in paragraph 4 below, the Debtor represents, admits, stipulates, and agrees (collectively, the "<u>Debtor's Stipulations</u>") as follows:

(i)    *Senior Secured Credit Facility*.  Prior to the Petition Date, the Debtor entered into that certain Credit and Guaranty Agreement (as amended, modified or otherwise supplemented from time to time prior to the Petition Date, the "<u>Senior Secured Credit Agreement</u>," and the loans thereunder, the "<u>Senior Secured Credit Facility</u>," and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, each as amended, modified or otherwise supplemented from time to time prior to the Petition Date, the "<u>Loan Documents</u>") by and among REVA, various lenders party thereto (the "<u>Senior Secured Lenders</u>"), and Goldman Sachs International, as administrative agent, collateral agent and lead arranger ("<u>GSI</u>" and together with the Senior Secured Lenders, the "<u>Prepetition Secured Parties</u>").  Each Loan Document is valid, binding, and, subject to applicable bankruptcy law, enforceable against the parties thereto in accordance with its terms.  Prior to the Petition Date, the Prepetition Secured Parties made certain loans, advances, and other extensions of credit pursuant to the Loan Documents in the aggregate principal amount of $9.7 million.  As of the Petition Date, approximately $9.7 million in principal amount plus accrued interest, costs, and fees is due and owing under the Senior Secured Credit Facility.

(ii)    *Liens and Collateral.*  Pursuant to and as more particularly described in the Loan Documents, the Debtor's obligations under the Loan Documents (the "<u>Prepetition Obligations</u>") are secured by, among other things, first priority liens in favor of the Prepetition Secured Parties (the "<u>Prepetition First Priority Liens</u>") in all of the Debtor's assets (the "<u>Prepetition Collateral</u>"), including all of the Debtor's inventory, intellectual property, accounts and accounts receivable, deposit accounts, contract rights and the proceeds of the foregoing, subject to certain customary exclusions and any other valid, perfected, and unavoidable lien or security interest otherwise existing as of the Petition Date, including pursuant to section 546(b) of the Bankruptcy Code, that is senior to the Prepetition First Priority Liens of the Prepetition Secured Parties (collectively, the "<u>Permitted Prior Liens</u>" and each a "<u>Permitted Prior Lien</u>").  Prior to the Petition Date, the Debtor maintained three bank accounts (the "<u>Bank Accounts</u>") in which cash was deposited as more fully described in the Debtor's motion for approval of its continued use of its cash management system, filed contemporaneously with the Motion.  REVA historically operated out of a single checking account (the "<u>BAML Account</u>"), however, in connection with entry into the *Second Amendment to Credit and Guarantee Agreement* by and among REVA, as borrower, GSI, as administrative agent for the lenders, the other lenders party thereto and Goldman Sachs Specialty Lending Group, L.P., as a new lender, the Debtor established two additional bank accounts, one of which is intended to receive the proceeds of any future loans (the "<u>Cash Collateral Account</u>"), and the other is intended to operate exclusively as a payroll account (the "<u>Payroll Account</u>").  The Debtor currently operates out of the Cash Collateral Account and the Payroll Account and will operate during the pendency of the case exclusively out of the Cash Collateral Account and the Payroll Account (in a manner consistent with prepetition

practices).  For the avoidance of doubt, the Cash Collateral Account (and the funds deposited therein) and the Payroll Account (and the funds deposited therein) constitute Prepetition Collateral.

(iii)    *Validity of Prepetition First Priority Liens and Prepetition Obligations*. The Prepetition First Priority Liens are (a) valid, binding, perfected (other than with respect to the BAML Account and the Payroll Account), duly recorded and enforceable liens on, and security interests in, all of the Debtor's right, title, and interest in, and to, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity, except only the Permitted Prior Liens.  The Prepetition First Priority Liens were granted to the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Loan Documents.  No portion of the Prepetition Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Loan Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable nonbankruptcy law.

(iv)    *Adequate Protection*.  As a result of the authorization for the Debtor to use Cash Collateral, the use, sale, or lease of the Prepetition Collateral, and the imposition of the automatic stay, the Prepetition Secured Parties are entitled to receive adequate protection pursuant to Bankruptcy Code sections 361, 362, and 363 for any diminution in the value, from and after the

Petition Date, of their interests in the Prepetition Collateral (including the Cash Collateral) resulting from the automatic stay and/or from the Debtor's use, sale or lease of the Prepetition Collateral, or otherwise during the Chapter 11 Case.  As adequate protection, the Prepetition Secured Parties will receive the adequate protection described in this Interim Order (including the adequate protection set forth in paragraph 8 hereof).  In light of such adequate protection, the Prepetition Secured Parties have consented to the Debtor's use of Cash Collateral, solely on the terms and conditions set forth in this Final Order.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain such consent.

E.    <u>Section 552(b); Section 506(c)</u>.  Prepetition Secured Parties are entitled to a waiver of (a) any "equities of the case" exception under Bankruptcy Code section 552(b); and (b) the provisions of Bankruptcy Code section 506(c).

F.    <u>Good Cause</u>.  Good cause has been shown for entry of this Final Order, and the entry of this Final Order is in the best interests of the Debtor and its estate and creditors.  Among other things, the relief granted herein will permit the Debtor to preserve and maintain the value of its assets. The stipulated terms of the Debtor's use of Cash Collateral and proposed adequate protection arrangements, as set forth in this Final Order, are fair and reasonable under the circumstances, and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

G.    <u>Good Faith</u>.  The Debtor's use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtor and the Prepetition Secured Parties and the Prepetition Secured Parties consent to the Debtor's use of Cash Collateral, and such use on the terms set forth herein shall be deemed to have been negotiated in "good faith."

H.    <u>Notice</u>.  The Debtor has caused notice of the Motion, and the relief requested therein, the Interim Hearing, and the Final Hearing to be served by facsimile, email, overnight courier, or hand delivery on the following parties (collectively, the "<u>Notice Parties</u>"): (i) the Office of the U.S. Trustee for the District of Delaware; (ii) the holders of the 20 largest unsecured claims against the Debtor; (iii) GSI; (iv) counsel to GSI; (v) the United States Attorney's Office for the District of Delaware; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rues, the Local Rules and orders of this Court; (viii) the state attorneys general for all states in which the Debtor conducts business; (ix) all parties who are known, after reasonable inquiry, to have asserted a lien, interest, encumbrance, or claim in the Prepetition Collateral, including Cash Collateral; (x) the Debtor's cash management banks; and (xi) any party that requested service pursuant to Bankruptcy Rule 2002.  Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and of the Final Hearing is good, sufficient and appropriate and complies with Bankruptcy Rules 2002, 4001(b) and (d).

**BASED UPON THE STIPULATED TERMS SET FORTH HEREIN, AND FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.    <u>Motion Granted</u>.  The Motion is GRANTED to the extent provided herein on a final basis.  Any objection to the interim relief requested in the Motion to the extent not withdrawn or resolved is hereby overruled on the merits.  Except as otherwise set forth herein, the Interim Order is hereby ratified in all respects as it was in effect from the date of entry through and including entry of this Final Order.

2.      <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Final Order, the Court hereby authorizes the Debtor to use existing and hereafter acquired Cash Collateral during the period beginning with the Petition Date and ending on the Termination Date (as defined herein) (such period, the "<u>Budget Period</u>"), for the disbursements set forth in the cash disbursements and receipts budget (which budget shall include a weekly forecast of transaction costs and capital expenditures) attached as **<u>Exhibit 1</u>** to the Interim Order (as such budget may be modified from time to time by the Debtor with the prior written consent of GSI as set forth in this paragraph and in paragraph 3(a) of this Final Order (the "<u>Budget</u>"), and for no other purposes.

3.      <u>Budget</u>.

(a)      Subject to the deviation allowance(s) provided below (each a "<u>Permitted Deviation</u>"), the Debtor will not permit for any applicable Measurement Period (as defined herein) the actual disbursements during such Measurement Period to exceed one hundred ten percent (110%) of the projected disbursements set forth on the Budget for such Measurement Period.  The Debtor shall be permitted to carry forward unused amounts to successive weeks for purposes of Budget testing set forth in this paragraph 3(a), with no carry-over surplus to a Subsequent Budget Period (as defined herein), if any, except to the extent agreed to in writing as set forth in this paragraph.  GSI (or its duly appointed agent) may, in its sole discretion, agree in writing to use of Cash Collateral (i) in a manner or amount which does not conform to the Budget (other than Permitted Deviations) (each such approved non-conforming use of Cash Collateral, a "<u>Non-Conforming Use</u>") or (ii) for the period following the extension of the Termination Date pursuant to paragraph 5 of this Final Order (such period, the "<u>Subsequent Budget Period</u>").  If such written consent is given, the Debtor shall be authorized pursuant to this Final Order to expend Cash

Collateral for any such Non-Conforming Use or any such Subsequent Budget Period in accordance with a subsequent Budget (a "Subsequent Budget") without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this Final Order for any such use of Cash Collateral; *provided* that each such permitted Non-Conforming Use shall be deemed a modification to the Budget for all testing purposes. The Debtor shall provide notice of any Non-Conforming Use, Subsequent Budget Period and Subsequent Budget to the United States Trustee and the Creditors' Committee, if any.

(b)　　During any Remedies Notice Period (as defined herein), the Debtor may only use Cash Collateral to pay the following amounts and expenses solely in accordance with the respective Budget line items: (i) the Carve Out (as defined herein); (ii) obligations for unpaid and accrued payroll and sales taxes; (iii) other expenses critical to keeping the business operating; and (iv) any such other obligations subject to the prior written consent of GSI.

(c)　　Notwithstanding anything to the contrary set forth in this Final Order, the Cash Collateral and the Carve Out may not be used:  (i) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) against the Prepetition Secured Parties or seek relief that would impair the rights and remedies of the Prepetition Secured Parties under the Loan Documents or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of the

Prepetition Secured Parties to recover on the Prepetition Obligations or seeking affirmative relief against the Prepetition Secured Parties; (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Obligations or Prepetition First Priority Liens on the Prepetition Collateral; or (C) for monetary, injunctive, or other affirmative relief against the Prepetition Secured Parties or the Prepetition First Priority Liens on the Prepetition Collateral that would impair the ability of the Prepetition Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Obligations; (ii) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, lien, or interests (including the Prepetition First Priority Liens) held by the Prepetition Secured Parties; (iii) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any action commenced, or that may be commenced pursuant to chapter 5 of the Bankruptcy Code including sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code (such actions, "Avoidance Actions"), against the Prepetition Secured Parties; or (iv) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of the Prepetition First Priority Liens or any other rights or interests of the Prepetition Secured Parties; *provided, however*, an amount up to $25,000 of Cash Collateral nevertheless may be used by any Creditors' Committee solely to investigate the foregoing matters within the Challenge Period (as defined herein).

    4.    <u>Effect of Stipulation on Third Parties</u>.

    (a)    *Generally.*    The representations, admissions, stipulations, agreements, releases, and waivers set forth in this Final Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtor, its estate and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor),

10

creditors, responsible persons, examiners with expanded powers, any other estate representative, and all parties in interest and all of their successors in interest and assigns, including, without limitation, any Creditors' Committee, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtor, as to which any Challenge (as defined herein) is irrevocably waived and relinquished) (a) has timely filed the appropriate papers, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in paragraph 3(c) of this Final Order), challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than the earlier of (x) the date of the hearing scheduled to consider confirmation of the Plan, so long as the Plan is confirmed, and (y) (i) with respect to parties in interest other than the Creditors' Committee, seventy-five (75) calendar days from the date of entry of the Interim Order and (ii) with respect to the Creditors' Committee, if any, sixty (60) calendar days from the appointment of the Creditors' Committee, if any, as the applicable period may be extended by the Court for good cause shown pursuant to an application filed by a party in interest before the expiration of the Challenge Period (as defined herein), or otherwise extended in writing from time to time without further order of the Court in the sole discretion of GSI (with respect to the Senior Loan Documents) (as applicable for clauses (x) and (y), the "Challenge Period"); *provided* that any trustee that is appointed in this Chapter 11 Case or any Successor Case prior to the expiration of the Challenge Period shall have until the later of the expiration of the Challenge Period or 10 days after such trustee's appointment to assert a Challenge; and (b) the Court enters judgment in favor of the plaintiff or movant in any such timely and property commenced Challenge proceeding, and any such judgment has become

final and is not subject to any further review or appeal.  For the avoidance of doubt, any trustee appointed or elected in this Chapter 11 Case or any Successor Case shall, until the expiration of the Challenge Period for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations and stipulations of the Debtor in this Final Order.

(b)     *Binding Effect.*    To the extent no Challenge is timely and properly commenced during the Challenge Period by a party with requisite standing, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive, and final on the Debtor, its estate, all creditors, any person, entity, or party in interest in the Chapter 11 Case, and their successors and assigns, and in any Successor Case (as defined herein) for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtor's estate.  More specifically, as to (i) any parties in interest, including any Creditors' Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled, or (ii) any and all matters that are not expressly the subject of a timely Challenge: (A) any and all such Challenges by any party (including, without limitation, any Creditors' Committee, any chapter 11 trustee, any examiner or

any other estate representative appointed in the Chapter 11 Case, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (B) all of the findings, Debtor's Stipulations, waivers, releases, affirmations, and other stipulations hereunder as to the priority, extent, validity, and enforceability as to the Prepetition Secured Parties' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in the Chapter 11 Case and any Successor Case, and (C) the Prepetition Secured Parties and each their respective agents, officers, directors, employees, attorneys, consultants, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Prepetition Lien and Claim Matters and shall not be subject to any further objection or challenge by any party at any time.

(c)     *No Standing*. Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including any Creditors' Committee, standing or authority to pursue any claim or cause of action belonging to the Debtor and/or its bankruptcy estate, including, without limitation, any Challenge with respect to the Loan Documents or the Prepetition Obligations.

5.     <u>Termination Date</u>.  The Debtor's authorization, and the Prepetition Parties' consent to use Cash Collateral in accordance with this Final Order shall terminate on the earliest to occur of (the "<u>Termination Date</u>"):  (i) February 29, 2020, unless such date is extended pursuant to the written consent of GSI; (ii) the termination or non-consensual modification of this Final Order or the failure of this Final Order to be in full force and effect; (iii) the entry of an order of this Court terminating the Debtor's right to use Cash Collateral; (iv) the dismissal of the Chapter 11 Case or

the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (a "Successor Case"); (v) the appointment of a trustee or an examiner with expanded powers; (vi) the delivery of a Termination Date Declaration (as defined herein) by GSI, as set forth in paragraph 14 below; (vii) February 18, 2020, if the Final Order, in form and substance acceptable to GSI, has not been entered by the Court on or before such date; and (viii) the consummation of the *Prepackaged Chapter 11 Plan of REVA Medical, Inc.* [Docket No. 13] (the "Plan") or an Acceptable Plan (as defined below).

6.      Reporting Requirements/Access to Records. The Debtor shall provide GSI with all reporting and other information required to be provided to GSI under the Loan Documents, other than the projected cash flows and other reporting required by Section 5.1(c) of the Senior Secured Credit Agreement.  In addition to, and without limiting, whatever rights to access GSI has under the Loan Documents, subject to existing confidentiality agreements, upon reasonable notice and to the extent reasonably requested, at reasonable times during normal business hours, the Debtor shall permit representatives, agents, and employees of GSI, respectively, to:  (i) have access to and inspect the Debtor's assets; (ii) examine the Debtor's books and records, and (iii) discuss the Debtor's affairs, finances, and condition with the Debtor's officers, directors, attorneys, consultants, and financial advisors.  In addition, the Debtor shall provide the following additional information to GSI:

(a)      Weekly (or more or less frequently as may be agreed to between the Debtor and GSI) calls with GSI and its advisors;

(b)      Presentations to the Prepetition Secured Parties at times and places as GSI may reasonably request;

(c)       Beginning on the Thursday following the second full week following the Petition Date, and every other week thereafter, an updated rolling weekly cash flow forecast of the Debtor substantially in the form of the Budget (each, a "Proposed Budget"), which Proposed Budget, upon written approval by GSI, shall become the new Budget;

(d)       Beginning on the Thursday following the second full week following the Petition Date, a weekly variance reconciliation report (a "Variance Report") on the Thursday of each week setting forth on a weekly basis for the prior week and on a cumulative basis from the Petition Date through the fourth (4th) full week after the Petition Date and then on a rolling two (2) week basis at all times thereafter (each of the foregoing, a "Measurement Period") the Debtor's (i) total cash receipts and (ii) total disbursements, noting therein variances from amounts set forth for such periods in the Budget; and

(e)       The Debtor shall provide copies of all substantive motions, applications, other pleadings, and proposed forms of order with respect thereto (all of which shall be in form and substance reasonably acceptable to GSI) to GSI at least three (3) business days prior to the filing of any such substantive motions, applications, other pleadings, and proposed forms of order with respect thereto with the Court.

7.       Insurance.   At all times, the Debtor shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the Collateral (as defined herein) on substantially the same basis as maintained prior to the Petition Date.

8.       Adequate Protection. In consideration for the Debtor's use of the Prepetition Collateral (including Cash Collateral), the Prepetition Secured Parties shall receive the following adequate protection:

(a)    *Adequate Protection Liens*.   Subject only to the Carve Out and Permitted Prior Liens and the terms of this Final Order, pursuant to Bankruptcy Code sections 361, 363(e) and 364, and in consideration of the stipulations and consents set forth herein, as adequate protection for and solely to the extent of any diminution in the value, from and after the Petition Date, of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) resulting from: (i) the use, sale, or lease of the Prepetition Collateral; and (ii) the imposition of the automatic stay (together, the "Adequate Protection Obligations"), the Debtor hereby grants to GSI, for the benefit of itself and the Senior Secured Lenders, an additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, postpetition security interest in and liens on (the "Adequate Protection Liens"), without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, all of the rights, title and interest of the Debtor and its "estate" (as created pursuant to Bankruptcy Code section 541(a)) in, to, and under all present and after-acquired property and assets of the Debtor of any nature whatsoever, whether real or personal, tangible or intangible, wherever located, including, without limitation, all cash and Cash Collateral of the Debtor, and any investment of such cash and Cash Collateral, accounts receivable and other rights to payment, whether arising before or after the Petition Date, inventory, general intangibles, chattel paper, real property and leaseholds and proceeds thereof (*provided, however*, Adequate Protection Liens shall only be granted on the leaseholds if expressly permitted under the lease, and to the extent that any lease prohibits the granting of a lien thereon,  GSI, for the benefit of itself and the Senior Secured Lenders, shall be granted a lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests), plants,

fixtures, machinery, equipment, commercial tort claims, deposit accounts, cash and cash equivalents, rights under letters of credit, capital stock and other equity or ownership interest held by the Debtor, including equity interests in subsidiaries and all other investment property, investments, patents, trademarks, trade names, copyrights, licenses, rights under license agreements and other intellectual property, inter-company notes or receivables due to the Debtor, all of the Collateral (as defined in the Senior Secured Credit Agreement), and all proceeds from Avoidance Actions of the Debtor or its estate, and as to all of the foregoing, all rents, issues, products, proceeds and profits generated by any of the foregoing (collectively, the "Collateral"). The Adequate Protection Liens are subject or subordinate only to (1) the Carve Out, and (2) the Permitted Prior Liens.   Moreover, the Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (x) any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Bankruptcy Code section 551, or (y) any other lien or security interest under Bankruptcy Code sections 361, 363, or 364 or otherwise except as expressly provided in this Final Order.   The Prepetition First Priority Liens under the Loan Documents shall be subordinate solely with respect to the Adequate Protection Liens, and the Prepetition First Priority Liens and the Adequate Protection Liens shall be subject to the Carve Out and the Permitted Prior Liens.

(b)     *Superpriority Claims.* Pursuant to Bankruptcy Code section 507(b), GSI, for the benefit of itself and the Senior Secured Lenders, effective as of the entry of this Final Order, are hereby further granted an allowed superpriority administrative expense claim (the "Superpriority Claim") in the Chapter 11 Case or any Successor Case, for the diminution in the value (as determined under applicable bankruptcy law) of the Prepetition Collateral, if any, subsequent to the Petition Date, which claims shall be junior only to the Carve Out, but shall, to

the extent provided by section 364(c)(1) of the Bankruptcy Code, be senior to and have priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment) and all other claims against the Debtor or its estate in the Chapter 11 Case or any Successor Case, at any time existing or arising, of any kind or nature whatsoever.  The Superpriority Claim shall be payable from and have recourse to all assets and properties of the Debtor.  Except for the Carve Out, the Superpriority Claim shall not be made subject to, or *pari passu* with, any claim heretofore or hereinafter granted or created in the Chapter 11 Case or any Successor Case, shall be valid and enforceable against the Debtor, its estate, and any successors or assigns thereto, including, without limitation, any trustee appointed in the Chapter 11 Case or any Successor Case.

(c)    *Adequate Protection Reservation.*  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

9.    <u>Modification of Automatic Stay</u>.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtor to provide the adequate protection provided herein; (b) permit the Debtor to perform such acts as GSI may reasonably request to assure the perfection and priority of the Adequate Protection Liens granted herein; and (c) authorize the Debtor to make payments in accordance with the terms of this Final Order.

10.   <u>Cash Management</u>.  The Debtor shall maintain its cash management arrangements in a manner consistent with the *Final Order (I) Authorizing Continued Use of Existing Cash Management System, Bank Accounts, and Business Forms and Payment of Related Prepetition Obligations; and (II) Waiving Certain Deposit Requirements* [Docket No. 66].  The Debtor shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of GSI.

11.   <u>Disposition of Collateral</u>.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral or the Collateral outside of the ordinary course of business without the prior written consent of GSI, unless such sale, transfer, lease, encumbrance or other disposition is approved by the Court and results in the indefeasible payment in full in cash of the Prepetition Obligations and, with respect to any letters of credit, either replacement thereof or the posting of Cash Collateral in the amount of 105% of such letters of credit.

12.   <u>Milestones</u>.  The Prepetition Secured Parties have conditioned the Debtor's use of Cash Collateral on compliance with the following requirements by the applicable date set forth below (together, the "<u>Milestones</u>"):

(a)   entry by the Court of the Final Order by February 18, 2020; and

(b)   the occurrence of the Effective Date of the Plan (as defined in the Plan) within forty-five (45) days after the Petition Date.

13.   <u>Events of Default</u>.  The occurrence of any of the following events, unless waived in writing by GSI, shall constitute an event of default (each, an "<u>Event of Default</u>"):

(a)   the Debtor's continued use of Cash Collateral after the Termination Date without the written consent of GSI, except during the Remedies Notice Period;

(b)      the Debtor's failure to (i) comply with the Budget, as required by paragraph 3(a) hereof, and related reporting and covenant requirements, as required by paragraph 6 hereof, or (ii) perform, in any material respect, any of their obligations under this Final Order, dispose of Prepetition Collateral or Collateral in compliance with paragraph 11 hereof, or comply with the Milestones under paragraph 12 hereof;

(c)      the Debtor obtaining postpetition credit or incurring postpetition indebtedness that is (i) secured by a security interest, mortgage or lien on all or any portion of the Prepetition Collateral or Collateral which is equal to or senior to, any security interest, mortgage or lien of the Prepetition Secured Parties in the Prepetition Collateral or the Adequate Protection Liens in the Collateral, or (ii) entitled to priority administrative status which is equal to or senior to the Superpriority Claims;

(d)      any lien or security interest purported to be created under the Loan Documents shall cease to be, shall be asserted by the Debtor not to be, or shall otherwise be determined by the Court not to be a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the Loan Documents or herein;

(e)      the failure by the Debtor to deliver to GSI any of the documents or other information required to be delivered pursuant to this Final Order when due or any such documents or other information contains a material misrepresentation;

(f)      dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to chapter 7, or the appointment of a chapter 11 trustee or examiner with expanded powers in the Chapter 11 Case;

(g)      entry of an order staying, reversing, vacating, amending, or rescinding any of the terms of this Final Order without the consent of GSI;

(h)      the filing by the Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Obligations or asserting any other cause of action against and/or with respect to the Prepetition Obligations, the Prepetition Collateral securing the Prepetition Obligations or any of the Senior Secured Lenders (or if the Debtor supports any such motion, pleading, application or adversary proceeding commenced by any third party);

(i)      the entry of an order or judgment by this Court or any other court: (i) modifying, limiting, subordinating, or avoiding the priority of the obligations of the Debtor under this Final Order, the obligations of the Debtor under the Loan Documents, or the perfection, priority, or validity of the Prepetition First Priority Liens or the Adequate Protection Liens; (ii) imposing, surcharging, or assessing against the Prepetition Secured Parties' claims or the Prepetition Collateral or the Collateral, any costs or expenses, whether pursuant to Bankruptcy Code section 506(c) or otherwise; (iii) impairing any of the Prepetition Secured Parties' right to credit bid; and (iv) authorizing the obtaining of postpetition credit or the incurrence of postpetition indebtedness that is secured by a security interest, mortgage, or other lien on all or any portion of the Prepetition Collateral or Collateral which is equal to or senior to any security interest, mortgage, or other lien of Prepetition Secured Parties, or granted herein or entitled to administrative expense priority status which is equal or senior to that granted to the Prepetition Secured Parties herein;

(j)      the sale of the Debtor's assets outside the ordinary course of business without the prior written consent of GSI;

(k)    the filing of a chapter 11 plan (other than the Plan) which does not provide for the indefeasible payment in full of the Prepetition Obligations on the effective date of such plan (an "Acceptable Plan"); or

(l)    any Cash Collateral or the Carve Out is used, whether or not pursuant to Court order, in a manner not permitted by this Final Order, including paragraph 3 hereof.

14.    Exercise of Remedies.  Upon the occurrence and at any time during the continuation of an Event of Default, the Debtor shall immediately cease using Cash Collateral (except to the extent permitted by paragraph 3(b) hereof) and GSI may, upon five (5) business days' (the "Remedies Notice Period") written notice to counsel to the Debtor, counsel to the Creditors' Committee, if any, and the U.S. Trustee (which such notice may be by electronic mail) (a "Termination Date Declaration") and in accordance with the terms and conditions of this Final Order, exercise the rights and remedies available under the Loan Documents, this Final Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Collateral in order to collect any amounts payable to the Prepetition Secured Parties pursuant to this Final Order and apply the same to such obligations.  The automatic stay under section 362 of the Bankruptcy Code shall be deemed immediately modified and vacated to the extent necessary to permit such actions.  The Debtor shall be entitled to seek an emergency hearing with the Court during the Remedies Notice Period to contest whether an Event of Default has occurred and/or is continuing and, at such hearing, the Court may consider such other matters as the Court may wish to consider.  Upon the expiration of the Remedies Notice Period, the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, in the Loan Documents, and as otherwise available at law without further order of or application or motion to the Court.  Any delay or failure of the Prepetition Secured Parties to exercise rights under any

Loan Documents or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Final Order shall survive the Termination Date.

15.    <u>Carve Out; Payment of Estate Professionals</u>.

(a)    *Generally.*  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (including but not limited to Bankruptcy Management Solutions, Inc. d/b/a Stretto, DLA Piper LLP (US) and Ernst & Young LLP) and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "<u>Professional Persons</u>") incurred in accordance with the Budget (including any Permitted Deviation) at any time before or on the first business day following delivery by GSI of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $50,000 incurred after the first business day following delivery by GSI of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise; *provided*, that, the Carve Out shall not include any bonus, transaction, success fees, completion fees, substantial

contribution fees, or any other fees of similar import of any of the foregoing for Professional Persons; *provided further*, that nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by GSI to the Debtor, the Debtor's lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, if any, which notice may be delivered following the occurrence and during the continuation of an Event of Default and upon termination of the Debtor's right to use Cash Collateral.

(b)     *Reservation of Rights.*  The Prepetition Secured Parties reserve their rights to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the Budget.  The payment of any fees or expenses of the Professional Persons pursuant to the Carve Out shall not, and shall not be deemed to, (i) reduce the Debtor's obligations owed to any of the Prepetition Secured Parties, or (ii) modify, alter, or otherwise affect any of the liens and security interests of such parties in the Collateral or Prepetition Collateral (or their respective claims against the Debtor).

(c)     *Payment of Allowed Professional Fees Prior to the Termination Declaration Date.*  Any payment or reimbursement made prior to the day on which a Carve Out Trigger Notice is given by GSI to the Debtor with a copy to counsel to the Creditors' Committee (if any) (the "Termination Declaration Date") in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)     *No Direct Obligation To Pay Allowed Professional Fees.*  None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Case or any successor case under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise

24

shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.  For the avoidance of doubt, nothing in this paragraph 15(d) shall negate or nullify the Carve-Out.

(e)    *Payment of Carve Out On or After the Termination Declaration Date.*  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

16.    <u>Release</u>.  Subject to paragraph 4 of this Final Order, the Debtor on behalf of itself and its estate (including any successor trustee or other estate representative in the Chapter 11 Case or any Successor Case) and any party acting by, or through, the Debtor or its estate, hereby, to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully, forever waives and releases the Prepetition Secured Parties, and each of their respective former or current officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of any and all "claims" (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date hereof relating to any of the Prepetition Collateral and any of the Loan Documents or the transactions contemplated under such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity, including, without limitation, any so-called "lender liability," recharacterization, subordination, Avoidance Action or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or

federal law and any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the liens or the claims of the Prepetition Secured Parties.

17.    <u>Reversal, Modification, Vacatur, or Stay</u>.  Any reversal, modification, vacatur, or stay of any or all of the provisions of this Final Order shall not affect the validity or enforceability of any Adequate Protection Liens, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Obligations, incurred prior to the effective date of such reversal, modification, vacatur, or stay.  Notwithstanding any reversal, modification, vacatur, or stay (a) this Final Order shall govern, in all respects, any use of Cash Collateral and the Adequate Protection Liens and Superpriority Claims incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Prepetition Secured Parties shall be entitled to all the benefits and protections granted by this Final Order with respect to any such use of Cash Collateral or such Adequate Protection Liens or Superpriority Claims incurred by the Debtor.

18.    <u>Reservation of Rights</u>.  Notwithstanding anything to the contrary herein, the entry of this Final Order and the transactions contemplated hereby shall not constitute an admission nor be deemed an admission by the Prepetition Secured Parties that absent their consent to the Debtor's use of Cash Collateral under this Final Order their interest in the Prepetition Collateral would be adequately protected.  Except as otherwise expressly set forth herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair:  (a) the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection; (b) any of the Prepetition Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the Prepetition Secured Parties to (i) request

modification of the automatic stay of Bankruptcy Code section 362, (ii) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek to propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

19.     <u>No Waiver for Failure to Seek Relief</u>.   The failure or delay of the Prepetition Secured Parties to seek relief or otherwise exercise any of their rights and remedies under this Final Order, the Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Prepetition Secured Parties.

20.     <u>Section 507(b) Reservation</u>.   Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for the Adequate Protection Obligations during the Chapter 11 Case, except with respect to the priority of the Carve Out any claim entitled to priority under section 507(b) shall be subordinate to the Carve Out.   Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Prepetition Secured Parties, that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against any diminution in value of their interests in and against the Prepetition Collateral (including the Cash Collateral).

21.     <u>Section 552(b) Waiver</u>.   The Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply.

22.     <u>Section 506(c) Waiver</u>.   The Debtor and its estate waive any claim under Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the

preservation, protection or enhancement of, or realization the Prepetition Secured Parties upon the Prepetition Collateral or Collateral.

23.     <u>No Marshalling/Application of Proceeds</u>.  In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral or Collateral or any proceeds thereof.

24.     <u>Good Faith</u>.  Based on the findings set forth in the Interim Order and this Final Order and the record made during the Interim Hearing, the Final Hearing, if any, and in these Chapter 11 Cases, pursuant to Bankruptcy Code sections 105, 361, 363, and 364, the Debtor and the Prepetition Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order and are entitled to the protections afforded by Bankruptcy Code section 363(m).

25.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

26.     <u>No Liability to Third Parties</u>.  In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtor, its creditors or estate, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtor.  Furthermore, nothing in this Final Order shall in any way be

construed or interpreted to impose upon the Prepetition Secured Parties any liability for any claims arising from the prepetition or postpetition activities of the Debtor (as defined in Bankruptcy Code section 101(2)).

27.     <u>Master Proof of Claim</u>.  The Prepetition Secured Parties shall not be  required to file proofs of  claim in the Chapter 11 Case or any Successor Case, and the Debtor's  Stipulations shall  be  deemed to constitute a  timely filed proof of claim against the Debtor.  Notwithstanding the foregoing, GSI (on behalf of itself and the other Senior Secured Lenders) is hereby authorized and  entitled, but not required,  in  its  sole  discretion, to  file  (and amend and/or supplement, as it sees fit) a master proof of claim for any claims  of  the Prepetition Secured Parties arising from the applicable Loan Documents; *provided* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtor.

28.     <u>Binding Effect of Interim Order</u>.  The provisions of this Final Order shall be binding upon all parties in interest in the Chapter 11 Case, including the Prepetition Secured Parties, any statutory committees that may be appointed in the Chapter 11 Case, and the Debtor and their respective successors and assigns and shall inure to the benefit of the Prepetition Secured Parties, the Debtor and their respective successors and assigns.  This Final Order shall bind any trustee hereafter appointed or elected for the Debtor's estate whether in the Chapter 11 Case or in the event of the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Such binding effect is a benefit of the Prepetition Secured Parties' bargain in connection with the Debtor's use of Cash Collateral and is an integral part of this Final Order.  Any payments to be made by the Debtor under any order (including any "First Day" order) shall be made in accordance with this Final Order and the Budget.

29.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any chapter 11 plan, (ii) converting the Chapter 11 Case to a chapter 7 case, or (iii) dismissing the Chapter 11 Case. The terms and provisions of this Final Order, including, for the avoidance of doubt, the provisions in paragraph 4 hereof, as well as the adequate protection granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of any of the foregoing orders, and such claims and liens shall maintain their priority as provided by this Final Order, the Loan Documents until all of the Prepetition Obligations are indefeasibly paid and satisfied in full in cash.

30.    <u>Effect of Dismissal</u>.  If the Chapter 11 Case is dismissed or converted, then neither the entry of this Final Order nor the dismissal or conversion of the Chapter 11 Case shall affect the rights of the Prepetition Secured Parties (to the extent of the adequate protection provided hereunder) under the Loan Documents or this Final Order, and all rights and remedies thereunder of the Prepetition Secured Parties (to the extent of adequate protection provided hereunder and remain subject to the Carve Out) shall remain in full force and effect as if the Chapter 11 Case had not been dismissed or converted.  If an order dismissing the Chapter 11 Case is entered, the Debtor agrees to propose an order that shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the adequate protection granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until the Adequate Protection Obligations have been satisfied, and (ii) to the fullest extent permitted by law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the adequate protection provided for herein.  The provisions of this Final Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with

respect to any conflict with any order that may be entered confirming any chapter 11 plan, dismissing the Chapter 11 Case or converting the Chapter 11 Case from chapter 11 to chapter 7.

31.    <u>Findings of Fact and Conclusions of Law</u>.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof.  To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

32.    <u>Order Effective upon Entry</u>.  Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

33.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction and power to enforce this Final Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

**JOHN T. DORSEY**
**Dated: February 19th, 2020**              **UNITED STATES BANKRUPTCY JUDGE**
**Wilmington, Delaware**